# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 298 | **DATE** | 12/3/2004 |
| **CASE TITLE** | Central States, et al vs. Pneumatic Trucking, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 15 Dec. 04 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Pneumatic's Motion for Summary Judgment is DENIED. Central States' Motion for Summary Judgment is GRANTED IN PART with respect to the conclusion that Pneumatic owes contributions from June 1, 2003 through and including July 15, 2004. Central States' Motion for Summary Judgment is DENIED IN PART with respect to the disputed two-week time period and the amount of contributions owed or damages.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | DEC 06 2004 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | rbf | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| WAP | courtroom deputy's initials | 2004 DEC -3 AM 11:47 U.S. DISTRICT COURT | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
DEC 3 2004
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST and SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, | |
| Plaintiffs, | Case No. 04 C 0298 |
| v. | Hon. Harry D. Leinenweber |
| PNEUMATIC TRUCKING, INC., | |
| Defendant. | |

DOCKETED
DEC 0 6 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, a multi-employer benefit plan and trust, and Howard McDougall, a Central States trustee, (hereinafter, collectively "Central States") bring this ERISA action to recover delinquent contributions allegedly owed by Defendant Pneumatic Trucking, Inc. (hereinafter, "Pneumatic"), an employer. Central States claims Pneumatic owes contributions for the period of June 1, 2003 through July 31, 2004 pursuant to a collective bargaining agreement and a participation agreement. Before the Court are both parties' Motions for Summary Judgment. For the following reasons, Central States' Motion is **GRANTED** in part and **DENIED** in part and Pneumatic's Motion is **DENIED**.

### I. BACKGROUND

Central States is an employee benefit plan and trust financed by contributions paid by multiple participating employers pursuant



to collective bargaining agreements with local International Brotherhood of Teamsters ("IBT") unions. (Stip. Facts ¶¶ 1-2). Central States holds and invests contributions to provide benefits to plan participants and beneficiaries. See id. ¶ 2. Pneumatic is an employer who made contributions to the Central States fund.

On or about June 19, 2000, Pneumatic and Teamsters Local 406 entered into a collective bargaining agreement covering the period from November 29, 1999 through July 31, 2004 (the "CBA"). See id. ¶ 7. The CBA required that Pneumatic make weekly contributions to Central States on behalf of its bargaining unit employees. (Pls. SOF ¶ 8). Pneumatic and Local 406 also entered into a participation agreement with an effective date of November 29, 1999 (the "PA"), which set forth the terms and conditions for Pneumatic's participation in the pension fund. (Stip. Facts ¶ 5). Under the PA and the CBA, Pneumatic was bound by the Central States Trust Agreement, the Central States Pension Plan, and all rules and regulations adopted by the Trustees of the Pension Fund. (Pls. SOF ¶¶ 16-17).

Pneumatic claims that in January 2001, it agreed with Local 406 to amend the CBA such that Pneumatic would be obligated to contribute to a 401(k) plan instead of contributing to Central States. (Def. SOF ¶ 9). In 2002, the IBT transferred the bargaining rights from Local 406 to Local 164. (Stip. Facts ¶ 11). Although Central States denies that an agreement existed between

- 2 -

Pneumatic and Local 406 after the January meeting, both parties agree that the proposed amendment was not reduced to writing and signed by the parties until after the IBTs transferred administration of Pneumatic's collective bargaining agreement to Teamsters Local 164. (D. SOF ¶ 10). A facsimile sent by Thomas Freyling, an employee of Local 406, containing proposed language for the amendment was sent prior to the time when the parties executed a written agreement.

The parties exchanged various items of correspondence in 2003, including a letter on October 22, 2003 from a Pneumatic attorney to Central States' manager of collections. The letter also copied Central States' Contracts Department and was sent by certified mail. In the letter, Pneumatic claims that it had not been obligated to contribute to Central States since May 11, 2003. (Oct. 22 letter, Ex. P). The letter also indicates that Pneumatic is no longer obligated to contribute due to an agreement with Local 406. See id. Pneumatic enclosed an unsigned copy of sample language for the proposed amendment sent by Local 406 employee Freyling with the letter.

Beginning about January 11, 2003, Pneumatic requested that Local Union 164 enter into a written amendment of the CBA to provide for a 401(k) plan rather than contributions to Central States. (Stip. Facts ¶ 13). Local 164 did not comply with this request. See id. Pneumatic filed an unfair labor practice charge

with the NLRB against Local 164. See id. ¶ 12. The parties eventually agreed to settle the case, and in December 2003, Local 164 entered into a settlement agreement with Pneumatic. See id., Ex. H. Under the settlement agreement, Local 164 agreed to sign the contract amendment proposed by Pneumatic, provided that it was approved by a majority of the bargaining unit. See id., Ex. I-J. A majority of the bargaining unit approved Pneumatic's proposal on January 31, 2004. See id. ¶ 17. On May 5, 2004, Local 164 executed the amendment requiring Pneumatic to switch from contributions to Central States to the 401(k) plan, which purports to be effective on June 1, 2003 (the "Amendment"). See id. Central States did not participate in the NLRB proceeding or the NLRB settlement and did not sign or participate in the negotiation of the Amendment. (Priede Aff. ¶ 27). Pneumatic asserts that a copy of the Amendment was received by Central States' Contracts Department on July 16, 2004. (Pls. SOF ¶ 55). Central States conversely claims that it did not receive a signed copy of the Amendment until August 11, 2004. (Pls. ASOF ¶ 76).

Pneumatic ceased making contributions to Central States on June 1, 2003. See id. ¶ 75. Pneumatic also stopped making contributions to the § 401(k) plan for the period prior to July 31, 2004. See id. ¶ 77.

## II. LEGAL STANDARD

### A. Applicable Law

Central States bring this Motion under Section 515 of ERISA, as amended, 29 U.S.C. § 1145. Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

29 U.S.C. § 1145 (1994). Section 515 gives pension funds, the right to "enforce the writings according to their terms." Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1149 (7th Cir. 1989)(en banc) ("Gerber"). There is no dispute that Central States is a multi-employer plan and that Pneumatic is an employer within the meaning of the statute. (Stipulation of Facts ¶¶ 2, 4). Therefore, the Court must look to the language of the agreements at issue to determine the extent of Pneumatic's contributions obligations.

A successful fund under Section 515 may receive various forms of relief. Section 502(g)(2) of ERISA provides:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan -
>
>   (a) the unpaid contributions;
>   (b) interest on the unpaid contributions;
>   (c) an amount equal to the greater of -
>       (i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the
                        plan in an amount not in excess of 20 percent
                        . . . ;
                (d)     reasonable attorney's fees and costs
                        . . . ; and
                (e)     such other legal or equitable relief as
                        the court deems appropriate.

     . . . interest on unpaid contributions shall be
     determined by using the rate provided under the plan, or,
     if none, the rate prescribed under . . . Title 26.

29 U.S.C. 1132(g)(2).

### B. Applicable Agreements

#### 1. The 1999-2004 CBA

The CBA states, in relevant part, that:

[Pneumatic] agrees to pay into the Central States, Southeast and Southwest Areas Pension Fund for each [e]mployee covered by this [a]greement who has completed (30) days of employment unless otherwise specified, a contribution of: $49.00, Effective August 1, 1999; $55.00, Effective August 1, 2000; $61.00, Effective August 1, 2001; $65.00, Effective August 1, 2002; and $69.00, Effective August 1, 2003 . . .

(Pls. SOF ¶ 8). The pension clause of the CBA also incorporates the Central States Trust Agreement, the Central States Pension Plan, and all rules and regulations adopted by the Trustees of the Pension Fund. See id. ¶¶ 16-17. The duration clause stipulates that the "Agreement shall be in full force and effect from August 1, 1999 to and including August 1, 2004 . . ." Id. ¶ 7.

#### 2. The Participation Agreement

The PA, while incorporating certain terms of the CBA, is independent from the CBA and can remain in effect even after the termination of the CBA. See Central States, Southeast and

- 6 -

Southwest Areas Pension Fund v. Marine Contracting Corp., 878 F. Supp. 1176 (N.D. Ill. 1995). The PA, by its terms, obligates Pneumatic to contribute to Central States "in accordance with its collective bargaining agreement with the Union . . ." (Pls. SOF ¶ 11), as follows in relevant part:

> This Agreement and the Employer's obligation to pay contributions shall not termination until either a) the Trustees decide to terminate the Agreement and provide written notice of their decision to the Employer or b) the Employer is no longer obligated by a contract or statute to contribute to the Fund(s) and the Fund(s) have received a written notice directed to the Fund[s'] Contracts Department . . . sent by certified mail with return receipt requested which describes the reason why the Employer is no longer obligated to contribute.

(PA ¶ 5).

### III. DISCUSSION

Central States submit five arguments in support of its Motion for Summary Judgment. The Court addresses the arguments in turn.

#### A. Pneumatic Owes Contributions Under The Amendment

Central States' principal claim is that the Amendment only eliminates Pneumatic's duty to contribute under the CBA and does not alter Pneumatic's independent duty to contribute under the unexpired PA. Pneumatic responds that the Amendment terminated Pneumatic's obligations under both the CBA and the PA. Pneumatic further claims that the October 22, 2003 letter from a Pneumatic attorney to Central States' manager of collections provided the specific required notice to satisfy paragraph five of the PA outlined above. Pneumatic sent the letter by certified mail to

Central States' Contracts Department and contained sample language for an amendment from a fax from Thomas Freyling, a Local 406 employee, to Richard Schwartz, President of Pneumatic. The amendment was not signed. Pneumatic acknowledges that Central States could not have received the letter until on or about October 22, 2003. (Def.'s Resp. Mem. at 4). Thus, the Court concludes that Pneumatic is liable to Central States at minimum for the delinquent contributions between June 1, 2003 and October 22, 2003. The parties contest Pneumatic's liability for the period following October 22, 2003.

The crucial fact in this case is when Central States' received the required notice eliminating Pneumatic's contribution obligations under the PA. The Court concludes that the October 22, 2003 letter fails to provide adequate notice because it contains only an unsigned copy of sample language for the proposed amendment. The letter, even if sent to the appropriate department at Central States, did not provide a legal basis for Pneumatic to terminate its obligation to contribute. Both parties acknowledge that any proposed amendment was not reduced to writing and signed by the parties until after bargaining rights were transferred to Local 164. At most, the October 22 letter provided Central States with notice of an oral agreement between the former union and the employer. Therefore, Pneumatic's duty to contribute was not terminated by the October 22, 2003 letter.

In Gerber, the Seventh Circuit held unenforceable the oral modification of an employer's obligation to pay into a pension fund. 870 F.2d at 1156. The pension fund "is like a holder in due course in commercial law . . . entitled to enforce the writing without regard to the understandings or defenses applicable to the original parties." Id. at 1149 (citations omitted). The Court in Gerber reached its conclusion based both on the text of ERISA § 515 as well as the legislative history of the ERISA amendments. See id. at 1152-53. Such history reflects that delinquent contributions can threaten the viability of the plans because a pension plan becomes obligated to employees under the terms of the PA and must pay an employee's pension regardless of whether the employer actually contributes. Id. at 1153. Like Gerber, Section 302 of the Labor Managements Relations Act provides that an employer's promise to remit contributions must be reduced to writing. 29 U.S.C. § 186(c)(5). Therefore, even if an oral agreement to amend the CBA existed between Local 406 and Pneumatic, such amendment is not enforceable.

Here, the Amendment was not reduced to writing and signed by Local 146 and Pneumatic until May 5, 2004. Central States did not sign or participate in the Amendment. Although Pneumatic stopped making contributions on June 1, 2003, its contribution obligations under the PA did not cease until Central States received written notification of the Amendment. The parties dispute the date that

Central States received the May 5, 2004 amendment. Pneumatic claims that Central States received the amendment on July 16, 2004, and submits in support what appears to be a signed, undated return mail receipt. Central States, on the other hand, submitted an affidavit in support of its contention that it did not receive the notice until August 11, 2004. Because Central States has only requested delinquent contributions through July 31, 2004, the relevant factual dispute concerns the period between July 16, 2004 and July 31, 2004.

The Court concludes that the parties have presented a genuine issue of disputed fact with regard to the date on which Central States received notice of the amendment. The Court holds that Pneumatic was contractually obligated to contribute to the pension fund for the time period beginning on June 1, 2003, through and including July 15, 2004. Summary judgment is thus granted in part in favor of Central States' on this basis. The disputed material issue is whether Central States, as required by the PA, received a copy of the May 5, 2004 amendment to the CBA on July 16, 2004 or August 11, 2004. Resolution of this factual dispute is material because it affects Pneumatic's obligations for contributions as well as the amount of damages. Pneumatic may or may not owe contributions for the time period from July 16, 2003 through July 31, 2004. Therefore, Central States' Motion is denied with respect to the disputed two-week period and any resulting damages.

## B. Central States' Remaining Arguments

Central States also submits four other arguments in supporting memoranda. Central States' second claim is that Central States' rules, which are incorporated in the PA and CBA, prohibit a mid-contract termination of Pneumatic's contribution obligations. Here, Pneumatic accurately notes that the PA specifically provides at the method by which an employer and a union can terminate obligations to Central States. Although the pension fund's rules include a "Bargain Out Rule," that rule provides that a collective bargaining agreement will only be acceptable if the agreement requires the employer to make contributions for the entire term of the agreement. The "Bargain Out Rule" only addresses whether a contract can be rejected, and does not require the parties to a collective bargaining agreement to give up their right to modify their agreement. To the contrary, the PA outlines the procedural requirements for an employer and a union to terminate their respective obligations.

Central States third claim that Pneumatic's mid-contract change defense is prohibited by Section 515 of ERISA similarly fails. Section 515 of ERISA does not stand for the proposition that a pension plan agreement can never be amended. Section 515 of ERISA mandates that an employer must "make . . . contributions in accordance with the terms and conditions of . . . [the] plan or agreement." 29 U.S.C. § 1145 (1994). The terms and conditions of

the CBA and PA allow for the termination of an employer's obligation to the pension fund under certain conditions. If Pneumatic provided effective notice of the prospective amendment, the obligation under the PA would have ended "in accordance with the terms and conditions" of the agreement.

Although Central States cites Gerber in support of its claim, the court in Gerber held only that oral side agreements between the Union and employer cannot alter an employer's obligation to pay into a pension fund. Gerber, 870 F.2d at 1149. The other cases cited by Central States in support of its third claim are distinguishable or supportive of Pneumatic's position on this issue. For example, in Dwyer v. Climatrol Industries, Inc., 544 F.2d 307, 310 (7th Cir. 1976), the Seventh Circuit upheld an amendment to a pension plan because it "affected only future contributions to the pension plan . . ." and because the pension plan agreement "provided for the right to modify." Id. at 310. Similarly here, ERISA does not prohibit the termination of the duty to pay contributions once an amendment is executed by the parties and Pneumatic provides adequate notice in accordance with the PA.

Central States' next claims that contracts for the benefit of an intended third party cannot be modified without the third party's consent. Central States claims to be the third party beneficiary of the PA, which specifically provides the procedure required to terminate an employer's contribution obligations.

Because third party beneficiary consent is not required under the PA, Central States' claim is without merit.

Finally, Central States asserts that Local 146 and Pneumatic lack the authority to retroactively eliminate vested rights. Central States is correct that an employer cannot agree with a union to modify existing obligations to a multi-employer pension plan retroactively. ERISA contains anti-forfeiture rules, 29 U.S.C. §§ 1053, which prohibit a plan from adopting an amendment eliminating or reducing benefits that have already been earned. See Central Laborers' Pension Fund v. Heinz, 124 S. Ct. 2230 (2004). Central States' final argument therefore supplements its principal claim and requires Pneumatic to contribute until its obligation was prospectively terminated by Central States' receipt of the executed May 5, 2004 Amendment. Central States' claim is moot, however, because the Court has already held that Pneumatic must make contributions for the time period beginning in June 2003 and continuing through July 15, 2004.

### IV. CONCLUSION

For the reasons stated above, Pneumatic's Motion for Summary Judgment is **DENIED**. Central States' Motion for Summary Judgment is **GRANTED in part** with respect to the conclusion that Pneumatic owes contributions from June 1, 2003 through and including July 15, 2004. Central States' Motion for Summary Judgment is **DENIED in**

**part** with respect to the disputed two-week time period) and the amount of contributions owed or damages.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: *December 3, 2004*